**In re STAGECOACH ENTERPRISES, INC., Debtor.**

**Bankruptcy No. 79–722–ORL–BK–GP.**

United States Bankruptcy Court, M. D. Florida, Orlando Division.

Dec. 27, 1979.

David Kerben, Orlando, Fla., for debtor.

Thomas B. Mimms, Jr., Tampa, Fla., for Peoples Gas System, Inc.

## ORDER SETTING AMOUNT OF UTILITY DEPOSIT

GEORGE L. PROCTOR, Bankruptcy Judge.

This matter came before the Court for hearing on December 13, 1979, on the application of the debtor, STAGECOACH ENTERPRISES, INC., to determine utility deposit with regard to PEOPLES GAS SYSTEM, INC. (hereinafter "PGS"), a utility providing gas service to the debtor.

STAGECOACH ENTERPRISES, INC., filed its petition on October 1, 1979, seeking an arrangement and reorganization of its business under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Section 1101 *et seq.*

Section 366(a) of the Bankruptcy Code states:

> "Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due."

No contention has been made that PGS has altered, refused, or discontinued service or discriminated against the debtor on the basis that a debt owed by the debtor to PGS for gas service rendered before the order

for relief was not paid when due. Hence, Section 366(a) need not be considered further.

Section 366(b) states:

"Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment."

■ Plainly, for the first twenty days after the date of the order for relief, the utility may not unilaterally alter, refuse, or discontinue service and the debtor may furnish adequate assurance of payment in the form of a deposit or other security for service after the date of the order for relief. However, once the twenty-day period has expired, the utility is in the driver's seat and may alter, refuse, or discontinue service as it sees fit unless the debtor has furnished the adequate assurance of payment demanded by the utility. If the debtor, the creditor's committee, or other party in interest is dissatisfied with the "adequate assurance of payment" demanded by the utility, then such party may apply to the court for an order seeking a reasonable modification of it. In other words, once the twenty-day period has expired, the utility may act unilaterally to terminate service if adequate assurance of payment has not been furnished.[1]

With regard to defining "adequate assurance of payment" the legislative history contained in House Report No. 95–595, 95th Cong., 1st Sess. (1977), states at page 350, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6306:

"If an estate is sufficiently liquid, the guarantee of an administrative expense priority may constitute adequate assurance of payment for future services. It will not be necessary to have a deposit in every case."

■ This language is not contained in Senate Report No. 95–989, 95th Cong., 2d Sess. (1978), at page 60. In the opinion of this Court, it is not generally appropriate to give administrative expense priority to debts incurred by the debtor for utility service furnished after the date of the order for relief as "adequate assurance of payment" for those services. To do so would unwarrantedly prejudice the rights of general creditors. If the debtor is to be allowed to continue to operate its business, it should pay its utility bills on a current basis and should furnish adequate assurance of payment in the traditional forms of a cash deposit, a payment bond, or some similar device.

■ The debtor in this case has applied to the Court to set a reasonable amount to be deposited by the debtor with PGS for a utility deposit. As indicated above, under Section 366, the utility itself has an initial right to set the amount of the deposit or other adequate assurance that it requires for payment for utility service. This Court may then, upon application, order a reasonable modification of whatever amount the utility deems necessary to provide adequate assurance of payment.

■ At a Section 366 hearing, the debtor, as the petitioning party bears the burden of proof. The debtor's evidence showed that PGS had required a deposit in an amount necessary to cover charges for normal service for two billing periods, in this instance $1,014.00. The debtor deposited one

---

1. Although Section 366, after the expiration of the twenty-day period, no longer prevents termination of utility service and the automatic stay of Section 362 does not apply, the Bankruptcy Court still has ample power to stay termination of utility service under the usual rules for the issuance of injunctions. Section 105, derived from Bankruptcy Act Section 2a(15), grants to the Bankruptcy Court the power to issue orders necessary or appropriate to carry out the provisions of Title 11 U.S.C. Also, the Bankruptcy Courts are brought within the scope of the All Writs Statute, 28 U.S.C. Section 1651, and are given the powers of a court of law, equity and admiralty by 28 U.S.C. Section 1481.

month's cover, $533.00, which it contended was an amount necessary to provide adequate assurance of payment. The debtor testified that the average monthly billing was in the range of $500.00 to $600.00 per month, and that the debtor believed that it had sufficient cash flow to pay the monthly billing on a current basis.

The evidence of PGS showed that the debtor was billed on October 19, 1979, in the total sum of $1,285.36, consisting of a $6.00 connect charge, $1,014.00 as the deposit charge, and $265.36 for gas service furnished from October 1, 1979 (the date of the order for relief) to October 16, 1979. This billing became past due on November 12, 1979. The utility acknowledged receipt of $533.00 on October 24, 1979, which it credited as a partial payment of the deposit charge, and receipt of a check in the sum of $752.36, on December 13, 1979, in the morning, prior to the hearing in the afternoon. The testimony was that the check had not been deposited because a telephone call to the bank indicated that there were not sufficient funds on deposit to cover the check.

There was further testimony that PGS had rendered a second billing to the debtor on November 16, 1979, which included the balance owing from the previous bill of $752.36 plus an additional $685.38 for gas service from October 16, 1979, to November 13, 1979. This second bill became past due on December 10, 1979, and had not yet been paid at the time of the hearing. There was also evidence that there was prepetition debt owing to PGS from the debtor in the approximate sum of $2,900.00.

The utility's witness testified that, by the time the gas meter is read each month, the debtor has received approximately 30 days of gas service. An additional three days are needed to process the bill and mail it to the debtor. Thereafter, the utility allows the debtor approximately 20 days to pay the bill before it became delinquent.

Finally, the debtor is sent a final notice granting an additional five days to pay the bill before the utility actually terminates gas service. Consequently, the debtor might receive 60 days of gas service without paying the bill before service is terminated.

The utility offered in evidence its Natural Gas Tariff filed with the Florida Public Service Commission. The relevant portion of the tariff states:

"A. DEPOSITS REQUIRED. Before rendering Gas Service, the Company may require a deposit not to exceed an amount necessary to cover charges for service for two billing periods. Such deposit may be held by the Company until final settlement of Customer's account. Interest at the rate of six per cent (6%) per annum from the date of commencement of service will be paid on deposits held by the Company. Such payment will be made in cash or by credit on the current bill during the month of August each year and at termination of service. No customer depositor shall be entitled to receive interest on his deposit until and unless the Customer relationship has been in existence for a continuous period of six months. A receipt for any deposit made by a Customer shall be given the Customer. Such receipt is not negotiable or transferable."

The utility also relied on Rule 25–7.83(1) of the Rules of the Florida Public Service Commission concerning Gas Service by Gas Public Utilities which states:

"Each utility may require from any customer or prospective customer a cash deposit intended to guarantee payment of bills, such deposit not to exceed ten dollars ($10.00) or an amount necessary to cover charges for two billing periods, whichever is the greater."

These exhibits were offered as persuasive evidence as to what a reasonable deposit should be.

This Court is not bound by either the tariff or the Rules because of the Supremacy Clause of the United States Constitution, Article VI, Cl. 2. Accordingly, the Court gives little weight to the utility's tariff and to the Public Service Commission Rules. However, the facts in this case conclusively demonstrate the need for a deposit

in an amount necessary to cover charges for service for two billing periods, and the Court so finds the amount of the deposit demanded by PGS to be reasonable and appropriate.

For the foregoing reasons, it is ORDERED as follows:

(1) The debtor's application for modification of the utility deposit is denied.

(2) The debtor shall deposit an additional $481.00 with PEOPLES GAS SYSTEM, INC., within ten (10) days from the date of this order.