### In re MARION STEEL COMPANY, fka Steel Bar Products, Inc., Debtor.

### MARION STEEL COMPANY, Plaintiff, v.

### OHIO EDISON COMPANY, Defendant.

Bankruptcy No. 83–01617.

Adv. No. 83–0781.

United States Bankruptcy Court, N.D. Ohio, W.D.

Oct. 17, 1983.

See also, 35 B.R. 201.

Kenneth C. Baker, Toledo, Ohio, John F. Kostelnik, Cleveland, Ohio, for AmeriTrust Co.

Charles Cobbe, Columbus, Ohio, Vincent M. Nathan, Toledo, Ohio, for Armco, Inc.

George E. Ferstle, Toledo, Ohio, for debtor.

John M. Carey, Toledo, Ohio, for Ohio Edison.

John N. MacKay, Greg Shibley, Toledo, Ohio, for Kripke-Tuschman, Inc.

## MEMORANDUM AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION, DISSOLVING TEMPORARY RESTRAINING ORDER AND FIXING ADEQUATE ASSURANCE OF UTILITY PAYMENT

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on to be heard on October 6, 1983 on the Marion Steel Company's (hereafter "Debtor") motion for a preliminary injunction against the Ohio Edison Company (hereafter "Ohio Edison") enjoining the termination of electrical service to Debtor's Marion, Ohio steel manufacturing operation, Ohio Edison's motion to dissolve a temporary restraining order issued by this Court on September 29, 1983, and on Debtor's motion, pursuant to 11 U.S.C. § 366, for an order of the court fixing the amount of deposit or other security that Debtor must post to provide the utility with adequate assurance of payment. For the reasons discussed below, while dissolving the injunction issued September 29, 1983, upon the

Debtor's maintenance of a $64,000.00 security deposit and payment of $107,000.00 weekly for future projected utility bills, the Court orders that utility service be maintained to Debtor except as herein provided.

## FACTUAL BACKGROUND

Debtor filed a petition under Chapter 11 of the Bankruptcy Code on September 12, 1983. Since November of 1981 it has actively been engaged in the manufacturing of steel products at its Marion, Ohio plant.

Since November of 1981 Debtor has consumed, on a monthly basis, from $400,000.00 to $550,000.00 of electricity from Ohio Edison. Debtor had been current in its obligation with Ohio Edison until about March or April of 1983 when it developed problems meeting its monthly utility bill. In mid August of 1983, upon Debtor's inability to pay for its July 1983 utility usage, Debtor closed down its steel manufacturing operation. As of the filing of the petition on September 12, 1983, Debtor owed Ohio Edison approximately 1.1 million dollars for prepetition utility service.

Since the filing of the petition Debtor and Ohio Edison have been attempting to reach an agreement as to the amount of security deposit and other conditions under which Ohio Edison would continue electrical service. On September 29, 1983, based upon Debtor's representation that Ohio Edison would not assure maintenance of utility service past October 2, 1983, the Court issued a temporary restraining order against disruption of utility service until hearing of Debtor's motion for a preliminary injunction on October 6, 1983.

The testimony of Debtor's president adduced at the hearing revealed that, while the utility had initially discussed $650,000.00 as an appropriate security deposit based upon past usage and the Public Utility Commission of Ohio's formula for computing a security deposit, the parties have more or less agreed, based upon projections of Debtor's postpetition usage of electricity, that only an initial $64,000.00 deposit plus $107,000.00 per week in advance payment need be made to ensure payment for Debtor's postpetition electrical service. They disagree as to the conditions under which utility service may be terminated in the event of Debtor's default upon these terms.

Debtor is currently financially unable to pay in advance for more than one week's electrical service. This financial crisis was precipitated, at least in part, by the temporary discontinuance of prepetition financing for current operating expenses by the AmeriTrust Company, one of Debtor's principal lenders. While the financing at least temporarily has been restored postpetition, under conditions approved by the Court, the arrangement leaves Debtor unable to project payment of current expenses more than one week into the future.

A disruption of Debtor's utility service, without any prior notice to the Debtor, could potentially cause a serious threat to the safety of Debtor's property and employees. At the heart of Debtor's manufacturing operation are two 40 ton capacity electric arc furnaces. These furnaces, which derive their power exclusively from Ohio Edison power, are used to convert scrap metal into steel billets which are subsequently transformed into the finished product sold to Debtor's customers. If not given at least 2 to 3 hours advance notice of utility disruption, Debtor's control of hot molten metals in intermediate stages of production would be lost, potentially damaging and dangerous to both equipment and some 70 employees on duty at a particular time. Debtor currently operates approximately 24 hours a day, five days a week.

At the present time, it appears that Debtor has a positive net worth with going concern asset values exceeding liabilities by approximately 11 million dollars.

## INJUNCTIVE RELIEF

Prior to discussion of the Court's reasoning in its decision to deny the Debtor's motion for a preliminary injunction, the Court finds it necessary to discuss both the procedural posture of this case and the facts leading up to the issuance of the Court's temporary restraining order.

This Chapter 11 case was commenced by the filing of a petition on September 12, 1983. While the Court has previously indi-

cated in its discussion of the facts underlying this case that the Debtor had shut down its manufacturing operation prior to the filing of the petition in this case, it is unclear whether the shut down, caused by Debtor's inability to pay its current operating expenses, was caused in part by unilateral shut-off or threat of shut-off of electrical service by Ohio Edison.

In any event, Debtor engaged in no significant production activities post petition until it was able to obtain court approval of an "Emergency Interim Order Authorizing Debtor-in-Possession to Incur Secured Debt" (hereinafter "financing order") on September 21, 1983. After approval of the financing order, Debtor apparently recommenced steel manufacturing on its premises.

Apparently sometime after entry of the financing order, Debtor also commenced formal negotiations with the Ohio Edison Company in an attempt to reach an agreement, pursuant to 11 U.S.C. § 366(b), as to what terms would be required by Ohio Edison to constitute "adequate assurance of payment." Indeed, at least a partial agreement had been reached between Debtor and the utility supplier prior to any Court involvement in this matter. In essence, the partial agreement provided that upon the posting of a $64,000.00 security deposit and prepayment for each week's projected electrical usage in the amount of $107,000.00 per week, payable every Monday, Ohio Edison would continue to provide electrical service to Debtor's Marion, Ohio plant.

The parties could not agree as to the method and conditions under which Ohio Edison had a right to discontinue electrical service in the event of Debtor's failure to make any of the required weekly payments. Ohio Edison insisted that it have a unilateral right to shut-off electrical service without prior Court permission. Debtor insisted that utility shut-off only occur after notice and a hearing and prior authorization of the Court. Further, Ohio Edison objects to the grant of certain superpriority expenses giv-

en to other creditors which are the subject of a separate appeal.

Upon the failure of the parties to reach an agreement on this matter, on motion of Debtor filed September 29, 1983 for a temporary restraining order against a discontinuance of electrical service, the Court convened a hearing on telephonic notice to counsel for Ohio Edison. Counsel for both parties made an appearance at the hearing. Upon the continued failure of counsel to reach an agreement as to the method or conditions under which Ohio Edison would discontinue electrical service in the event of a default on Debtor's promise to make weekly advance utility payments, after Ohio Edison's counsel declined to give either the Debtor or the Court assurance that utility service would not be cut-off pending a Court determination of the "adequate assurance of payment" issue under § 366, the Court entered a temporary restraining order enjoining an electrical service shut-off pending the Court's ruling on Debtor's motion for a preliminary injunction on such issue.

Ohio Edison has expressed its continuing objection on both procedural and substantive grounds to the continuance of any injunction. First, Ohio Edison challenged the authority of the Court to issue such injunction absent formal compliance with various aspects of Fed.R.Civ.P. 65, made applicable in adversary proceedings under Bankruptcy Rule 7065. Second, Ohio Edison questioned the propriety of injunctive relief arguing a formal lack of proof of any irreparable harm to Debtor, a prerequisite, it maintains, to issuance of an injunction.

While resolution of all these questions necessarily is beyond the scope of this order, the Court will at least partially touch on these issues in its discussion of the sufficiency of Debtor's motion for a preliminary injunction under Rule 65 Fed.R.Civ.P.

## DISCUSSION

One of the asserted procedural defects Ohio Edison has complained of during the course of these proceedings has been the failure of Debtor to have initiated this re-

quest for injunctive relief by way of an adversary proceeding, to wit—the filing of a complaint for injunctive relief. Although it appears that this defect has at least in part been remedied by the filing on October 6, 1983 at 3:04 p.m. of the instant "Complaint to Enjoin Threatened Termination of Utility Services", it appearing that there is at least some reported precedent for requiring such a procedure, *see Calumet Realty Co. v. Philadelphia Gas Works (In re Calumet Realty Co.),* 20 B.R. 996 (Bkrtcy.E.D. Pa.1982); *see also* 2 *Collier Bankruptcy Practice Guide,* ¶ 39.03[15] and ¶ 39.04 (1983), the Court deems it appropriate to comment further on this matter.

The Debtor filed its "Motion for Temporary Restraining Order and for Order Fixing and/or Modifying Security Deposit" on September 29, 1983. Both the motion and order granting the temporary restraining order purport to base their authority on Bankruptcy Rule 7065, which deems Fed.R. Civ.P. 65 applicable in adversary proceedings in bankruptcy court with exceptions not herein relevant. By definition Bankruptcy Rule 7001 provides that an adversary proceeding "is a proceeding in bankruptcy court ... to obtain an injunction or other equitable relief." Furthermore, Bankruptcy Rule 7003 provides that Rule 3 Fed.R.Civ.P. applies in adversary proceedings. Rule 3 Fed.R.Civ.P. in turn provides that "[a] civil action is commenced by filing a complaint with the court." Thus, a literal reading of the relevant procedural rules leads one to the conclusion that Ohio Edison's objection that this proceeding had been procedurally deficient prior to the filing of the instant complaint seems well taken. Indeed, at an impromptu hearing commenced October 4, 1983 on Ohio Edison's motion to dissolve the temporary restraining order of September 29, 1983 the Court, in the interest of subordinating temporarily this procedural dispute to the substantive rights of the parties, directed that Debtor so file the instant complaint. The Court then deferred consideration of the motion to dissolve the September 29, 1983 temporary restraining order to the hearing

on Debtor's motion for a preliminary injunction two days later on October 6, 1983. The authority relied upon by the Court for the interim validity of the temporary restraining order lies in the Court's power to treat the motion and accompanying affidavit as a complaint pending filing of the formal adversary complaint. *See Wright & Miller, Federal Practice and Procedure:* Civil § 2949 at 467–468.

The confusion as to the necessity of the filing of an adversary complaint as a condition precedent to injunctive relief, if any, may lie with certain authorities that have held that a request of the court to "order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment" under 11 U.S.C. § 366(b) is a contested matter governed by Bankruptcy Rule 9014. *See In re Northwest Recreational Activities, Inc.,* 8 B.R. 7, 6 B.C.D. 1375 (Bkrtcy.N. D.Ga.1980); *In re RobMac, Inc.,* 8 B.R. 1, 6 B.C.D. 1369 (Bkrtcy.N.D.Ga.1979). In a contested matter not otherwise governed by the Bankruptcy Rules, Rule 9014 provides that relief shall be requested by motion.

Whatever the ultimate outcome of this dispute, at this point, the Court deems it appropriate to decline further comment on this matter. The dispute over the necessity of filing an adversary complaint has burgeoned into Ohio Edison's counterclaim in the instant case based on a claim of abuse of judicial process. In light of Ohio Edison's motion for withdrawal of reference of this case filed pursuant to "Emergency Rule for Bankruptcy Procedure" (c)(2), *see generally White Motor Corp. v. Citibank,* 704 F.2d 254 (6th Cir.1983) (upholding the validity of the emergency rule), the resolution of this dispute may be in the hands of the district judge to which this motion is assigned.

■ In all future proceedings of this nature, however, when a party invokes the Court's equitable power to enjoin a utility shut-off prior to the time a § 366(b) "adequate assurance" hearing can be held, the Court will either insist on the filing of an adversary complaint *ab initio* or provide for

the automatic termination of any temporary restraining order issued prior to filing a complaint within 2 days of its issuance if a complaint is not filed within such time. As a policy matter, the Court has no interest in promoting litigation as an end in itself.

■ Finally, turning to the merits of the present motion for the issuance of a preliminary injunction, the grant or denial of a preliminary injunction is a matter within the sound discretion of the trial court. *Buffler v. Electronic Computer Programming Institute, Inc.,* 466 F.2d 694 (6th Cir.1972). In exercising its discretion to grant or deny a motion for a preliminary injunction, however, the controlling precedent in this circuit, *see Mason County Medical Association v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977); *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 102 (6th Cir.1982), requires that the trial court consider four factors:

1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiff has shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

All these factors have been weighed and considered by the Court in its decision to deny the instant motion for a preliminary injunction.

An anomalous situation exists in this case in view of the fact that while the Court has denied the motion for a preliminary injunction under Rule 65 Fed.R.Civ.P. against Ohio Edison's discontinuance of utility service, the terms of its order under 11 U.S.C. § 366(b), discussed below, in effect mandates the conditional maintenance of utility service. The question of whether plaintiff has shown "a strong or substantial likelihood or probability of success on the merits" of the complaint, then, seems almost

moot. For this reason, the Court will defer to its discussion of the § 366(b) motion as determinative of this issue.

■ The determining factor in the Court's decision to deny the motion for a preliminary injunction is the present lack of any formal evidentiary showing by Plaintiff/Debtor of any irreparable injury. The only witness produced by Debtor at the October 6, 1983 evidentiary hearing on the motion was James R. Conway, President of the debtor corporation, the Marion Steel Company. Far from substantiating Debtor's counsel's continuing representation that by virtue of the failure of counsel to reach an agreement as to the terms and conditions of "adequate assurance of payment" under § 366 there was a continuing threat of disruption of utility service, Mr. Conway's only discussions and understandings on this matter were with local officials of Ohio Edison. The understanding Mr. Conway reached with local officials was that the previously described arrangement was satisfactory to both sides as constituting a reasonable estimate of actual weekly charges. Mr. Conway had received no threat of utility shut-off. There thus was no evidence of any actual or implied threat of utility shut-off produced from the testimony of Debtor's only witness. As a result, this Court cannot make a specific finding of actual or threatened irreparable harm to Plaintiff on the evidence presented, a necessary prerequisite to the issuance of a preliminary injunction. *Friendship Materials, Inc. v. Michigan Brick, Inc., supra,* 679 F.2d at 105. In sum, for this reason, the motion for a preliminary injunction is denied.

■ This finding, however, somehow belies certain inferences which could be drawn from the procedural posture of this case. Counsel for both parties in this case in the Court's presence were unable to agree to mutually acceptable terms under § 366(b). Section 366(b) provides as follows:

Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a

deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

The failure to reach such an agreement or to what constitutes "adequate assurance of payment" under § 366(b) enables the utility, under the first sentence of § 366(b), to "alter, refuse, or discontinue service" unilaterally after 20 days after the date of the order for relief. *In re RobMac Inc., supra,* 8 B.R. at 3, 6 B.C.D. at 1370; *In re Stagecoach Enterprises, Inc.,* 1 B.R. 732, 734, 5 B.C.D. 1142, (Bkrtcy.M.D.Fla.1979). Thus, the Court maintains its strong conviction, based upon its experience with similar matters under the Code, that in the absence of such an express agreement, a continuing threat of actual irreparable harm in the form of a potentially dangerous unilateral electrical cut-off could have occurred in this case. The Court thus felt constrained to issue the September 29, 1983 temporary restraining order to maintain the "status quo" pending a determination of the motion for a preliminary injunction and the § 366(b) "adequate assurance of payment" issue. Subsequent to the Court's determination of the § 366(b) issue, any further request for injunctive relief by Debtor may be rendered moot through issuance of the § 366(b) order detailing the terms and conditions of "adequate assurance of payment." In sum, Debtor may indeed have no desire to prosecute its complaint for injunctive relief in light of the Court's determination of the § 366(b) issue. At this point, the only reason for the existence of the adversary proceeding may be to determine the merits of Ohio Edison's counterclaim for attorneys fees based on their assertion of Debtor's misuse of legal process in conjunction with obtaining the temporary restraining order.

Debtor's failure to adduce proof on the issue of irreparable harm, however, despite the above ruminations on the necessity of such proof, spells the death knell of the instant motion for a preliminary injunction.

Despite the Court's bench ruling that it had reached the above result pursuant to a Rule 41(b) motion it appearing, on reconsideration, that the grant of such a motion would be dispositive of the entire case, *see Wright & Miller, Federal Practice and Procedure: Civil* § 2371 at page 220 (1971), the Court specifically denies the 41(b) motion and instead bases its decision on the insufficiency of the motion for a preliminary injunction. The merits of Plaintiff's complaint, then, are still subject to dispute.

## ADEQUATE ASSURANCE

█ The morass of procedural obstacles which Ohio Edison has suggested preclude any type of injunctive relief against a utility shut-off under Rule 65 Fed.R.Civ.P. are, in the opinion of the Court, inapplicable to the present § 366(b) determination of what, in a given case, constitutes "adequate assurance of payment." More specifically, at or after the time the court holds its § 366(b) hearing, the Court holds that its equitable power under § 366 embellished by its 11 U.S.C. § 105 power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" permits it to fashion, in the exercise of its sound discretion, an appropriate remedy, including injunctive relief, without following all the formal procedural requisites of Rule 65 Fed.R.Civ.P. Section 366 by its terms empowers the court to order such continuation of utility service subject only to the utility's right to "adequate assurance of payment." *In re Utica Floor Maintenance,* 25 B.R. 1010, 1015, 10 B.C.D. 167, 171 (D.C.N.D.N.Y.1982). The Court is constrained to hold that until the § 366 hearing can be held, if the debtor and utility fail to reach an agreement as to what constitutes "adequate assurance" within 20 days of the order for relief, the Rule 65 procedure is the most appropriate vehicle to protect the rights of both parties involved. However, this issue seems far from settled. *See In re Utica Floor Maintenance, supra,* 25 B.R. 1010, 1011, 10 B.C.D. 167, 168 (Bankruptcy Court issued show cause order restraining utility from terminating utility services and scheduling § 366(b) hearing to

determine whether further security required to afford utility "adequate assurance of payment"). Reiterating its previous position, in the interest of conserving the valuable resources of the Court, the Court has chosen to obviate these disputes by requiring that an adversary proceeding and Rule 65 motion be filed in order to enjoin utility service before the § 366 hearing.

Turning to the merits of the § 366 motion, the Court has endeavored to illuminate both the procedural and substantive aspects of this legislative enactment. Section 366 provides as follows:

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366. The Debtor has made no contention that Ohio Edison has altered, refused or discontinued service or discriminated against the Debtor on the basis that a debt owed by the Debtor to Ohio Edison for electrical service rendered before the commencement of this Chapter 11 case was not paid when due. Consequently, this case does not involve the determination of any § 366(a) issue.

Two issues are involved in this contested matter under § 366(b). First, what procedures may be employed by parties in interest in the conduct of these disputes? Second, what are the respective legal rights of the parties under § 366(b) in both the

absence and presence of court involvement. To this end, the district court in *In re Utica Floor Maintenance, Inc., supra,* illuminated some of the legislative history and competing interests involved in a § 366 proceedings:

The legislative history of 11 U.S.C. § 366 indicates that the provision was fashioned to protect the utility while preventing discrimination against the debtor. H.Rep. No. 95–595, 95th Cong., 1st Sess., 350 (1977). *Massachusetts Electric Co. v. Keydata Corp. (In re Keydata Corp.,)* 12 B.R. 156, 158 (Bkrtcy.App.Pan., D.Mass. 1981); *Virginia Electric and Power Co. v. Cunha (In re Cunha),* 1 B.R. 330, 333 (Bkrtcy.E.D.Va.1979). When the issue arises in the context of a Chapter XI proceeding, the bankruptcy court must also, of course, concern itself with the success of the rehabilitative process. *See, e.g., In the Matter of Robmac, Inc., 8 B.R. 1, 4* (Bkrtcy.N.D.Ga.1979) ('The amount of adequate assurance suggested to be provided under § 366 should not be contradictory to the rehabilitation process'); *In re George C. Frye Co.,* 7 B.R. 856 (Bkrtcy.D.Me.1980). To these ends, bankruptcy courts must be afforded reasonable discretion in determining what constitutes 'adequate assurance' of payment for continuing utility services. (footnote omitted)

25 B.R. at 1013, 10 B.C.D. at 170.

The first sentence of § 366(b) provides that, notwithstanding the proscription in § 366(a), a "utility may alter, refuse, or discontinue service if neither the trustee *nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment . . . for service after such date.*" Several conclusions can be drawn from this provision. First, "for the first twenty days after the date of the order for relief, the utility may not unilaterally alter, refuse, or discontinue [existing] service." *In re Stagecoach Enterprises, Inc., supra,* 1 B.R. 732, 734, 5 B.C.D. 1142. This section gives debtors protection from a cut-off of service by a utility because of the filing of a bankruptcy case. This

section is intended to cover utilities that have some special position with respect to the debtor, such as an electric company, gas supplier, or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility.

House Report No. 95–595, 95th Cong., 1st Sess. 350 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6306. This does not, however, prevent the utility from making a demand upon the debtor within the first 20 days after the order for relief for what it feels constitutes a sufficient "deposit or other security necessary to provide adequate assurance of payment." *In re Rob-Mac, Inc., supra,* 8 B.R. at 3, 6 B.C.D. at 1370. Furthermore, such a demand for security authorized by § 366(b) does not violate the automatic stay provisions of 11 U.S.C. § 362(a). *In re Santa Clara Circuits West, Inc.,* 27 B.R. 680, 683 (Bkrtcy.D.Utah 1982). At this point, a utility may make an independent determination of what security is necessary to provide "adequate assurance." *Id.* If the debtor meets the utility's demand and circumstances remain unchanged, no court supervision is required. Alternatively, the utility may make no demand on the debtor within the twenty day period, leaving upon the debtor the burden of coming forward within the twenty day period with "adequate assurance of payment." *In re RobMac, Inc., supra,* 8 B.R. at 3, 6 B.C.D. at 1370.

The situation changes after the expiration of the twenty-day period:

> However, once the twenty-day period has expired, the utility is in the driver's seat and may alter, refuse, or discontinue service as it sees fit unless the debtor has furnished the adequate assurance of payment demanded by the utility.... In other words, once the twenty-day period has expired, the utility may act unilaterally to terminate the service if adequate assurance of payment has not been furnished. (footnote omitted)

*In re Stagecoach Enterprises, Inc., supra,* 1 B.R. at 734, 5 B.C.D. at 1142.

The second sentence of § 366(b) poses different questions. It provides that "[o]n request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment." Under this provision, may the court order restoration of shut-off utilities upon the furnishing of adequate assurance of payment? Are prior agreements or court orders subject to reasonable modifications? The answer is yes:

> Even after termination of service or after a prior order or agreement which has provided adequate assurance of payment, the debtor may request a hearing and the court may order reinstatement of service or reasonable modification of the amount of the deposit or other security in a modified order which shall provide adequate assurance. The utility must be given notice of the request for such hearing and an opportunity to be heard.

*In re RobMac, Inc., supra,* 8 B.R. at 3, 6 B.C.D. at 1370–1371. Furthermore, the same right to request modification, however, should also be permitted to the utility.

In the present case, on request of the Debtor, the Court has been called upon to determine what constitutes "adequate assurance of payment." Surprisingly, however, the record is unclear as to what demand, if any, Ohio Edison has made on this Chapter 11 Debtor. In paragraph 4 of Debtor's adversary complaint seeking injunctive relief, Debtor asserted that Ohio Edison had verbally communicated a post petition demand for a security deposit in the amount of 1.3 times the Debtor's estimated monthly usage of $500,000.00 or about $650,000.00. In an objection to Debtor's motion for the fixing and/or modifying of a security deposit filed October 6, 1983, signed by three attorneys of record for Ohio Edison, this assertion was confirmed, and, indeed, supported by affidavit of Donald H. Golden, superintendent of accounting, credit and collections for the Marion Division of Ohio Edison. Nevertheless, in its answer and counterclaim filed October 11, 1983, signed by the same three attorneys, Ohio

Edison specifically denied the nearly identical assertions of paragraph 4 of the complaint. This leads the Court to question the compliance of the answer and counterclaim with Fed.R.Civ.P. 11, as amended effective August 1, 1983. This rule provides in part as follows:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name ... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; *that to the best of his knowledge, information, and belief it is well grounded in fact* and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. (emphasis added)

The deficiency is pointed out, at this point, only to underscore the difficulty perceived in determining Ohio Edison's position as to what constitutes "adequate assurance of payment." Debtor's only witness at trial testified that the demand of $650,000.00 was reduced to $460,000.00 by local Ohio Edison officials, but that there presently existed an apparently mutually satisfactory arrangement for weekly payments of $107,000.00 plus a $64,000.00 security deposit. Ohio Edison introduced no evidence in rebuttal of Debtor's case. Instead, they based their opposition to the motion for a preliminary injunction on the apparent lack of any disagreement that might lead to a utility shut-off.

Left undisputed in this case was Mr. Conway's testimony both that the weekly advance payment agreement matched actual projected charges for utility usage and that the Debtor was presently unable, through its postpetition financing arrangement, to pay anything more. With this background, the only issue, in the Court's opinion, is whether this arrangement constitutes "adequate assurance of payment."

The Bankruptcy Appellate Panel for the First Circuit in *Massachusetts Electric Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (1981), recently commented on the meaning of "adequate assurance of payment":

> The phrase 'adequate assurance of payment' is not defined in the Code. Its meaning depends upon the facts and circumstances of each case, keeping in mind the intent of Congress to protect the utility company while preventing discrimination against the debtor. *In re Cunha,* 1 B.R. 330 (Bkrtcy.E.D.Va.1979) (Bonney, B.J.) In our view, 'adequate assurance of payment' does not require an absolute guarantee of payment. What is required is that the utility be protected from an unreasonable risk of nonpayment.

A similar view was expressed by the United States District Court for the Northern District of New York in *In re Utica Floor Maintenance,* 25 B.R. 1010, 1016 (1982):

> Accordingly, the lesson from both the pre-Code decisions and from the bankruptcy court cases applying § 366 is that the determination of 'adequate assurance' inescapably involves an exercise in judgment; that 'every § 366 proceeding must be decided upon its unique facts and the ultimate finding by the Court must be that the utility involved has or has not been provided with adequate assurance of payment.' *In re George C. Frye, supra,* 7 B.R. at 858.

The determination of what constitutes "adequate assurance of payment" thus rests in the sound discretion of the trial court based on the facts and circumstances of each case. (*See Santa Clara Circuits West, Inc., supra,* 27 B.R. 680, 685 for listing of some factors to be considered.) The utility must be protected from an unreasonable risk of nonpayment. At the same time, the terms of "adequate assurance of payment" should not be "such a financial burden upon the debtors as to thwart or deter rehabilitation potential, and thereby be an unreasonable demand. The amount of the adequate assurance suggested to be provided under § 366 should not be contrary to the rehabil-

itation process." *In re RobMac, Inc., supra,* 8 B.R. at 4, 6 B.C.D. at 1371.

 Considering the $650,000 figure mentioned in this case, based upon the Public Utility Commission of Ohio's formula of 1.3 times the average monthly usage, there is ample authority for the proposition that "adequate assurance" does not mean the deposit approved or required by a state regulatory commission, *e.g., In re Santa Clara Circuits West, Inc., supra; In re Utica Floor Maintenance, Inc., supra; In re Stagecoach Enterprises, Inc., supra.* Conversely, the court may require debtor to furnish adequate assurance of payment in the form of a utility deposit *regardless* of whether the utility may otherwise obtain such assurance under applicable regulation or state law. *In re Northwest Recreational Activities, Inc., supra,* 8 B.R. at 4, 6 B.C.D. at 1336. The court may thus make an independent determination of this issue under § 366. *Id.*

As has previously been stated, there has been no evidence introduced that the presently existing arrangement with Ohio Edison does not offer them protection against unreasonable risk of nonpayment. In fact, the uncontroverted evidence shows that this arrangement almost identically matches both Debtor's and Ohio Edison's best estimates of Debtor's projected post petition utility usage. As further protection, Debtor has offered daily meter reading privileges to protect against any damages if actual usage exceeds the projected usage.

Furthermore, due to the limitations of Debtor's post petition financing of operating expenses, a requirement of anything more, under the present circumstances, could potentially thwart the Debtor's rehabilitation effort. Debtor's present level of operation can only be projected one week into the future. This is so since, for any given week, Debtor's operating budget is limited by the amount of accounts receivable it generates and that it can borrow on in accordance with its post petition financing arrangement with AmeriTrust.

Ohio Edison is further protected under § 364(a) by an administrative expense pri-

ority in the event that, upon liquidation, the advance payments in this case prove inadequate. As noted in the legislative history of § 366, "[i]f an estate is sufficiently liquid, the guarantee of an administrative expense priority may constitute adequate assurance of payment for future services. It would not be necessary to have a deposit in every case." House Report No. 95–595, 9th cong., 1st Sess. 350 (1977), U.S.Code Cong. & Admin.News, p. 6306. *See also, In re Santa Clara Circuits West, Inc., supra; In re Utica Floor Maintenance, Inc., supra; Massachusetts Electric Co. v. Keydata Corp., (In re Keydata Corp.), supra. Contra, In re Stagecoach Enterprises, Inc., supra,* (administrative expense priority not generally appropriate as "adequate assurance of payment.") Considering the eleven million dollars surplus of assets over liabilities in this case, it appears that this additional assurance may be a real protection.

Last of all, Ohio Edison vehemently protests any post petition arrangement in which it is not given an unilateral right to shut-off in the event of default and, furthermore, has intimated its desire to be given superpriority treatment for any post petition utility usage that might not be paid under this arrangement.

 The latter conception will be dealt with first. Ohio Edison has proffered no authority in support of its entitlement to be given priority treatment over § 503(b) administrative expenses for post petition utility service. The legislative history of § 366, referred to earlier, while recognizing that a § 503(b) priority treatment might in itself constitute "adequate assurance of payment" under certain circumstances, nowhere alludes to the possibility of treating a utility to priority treatment *over and above* a § 503(b) priority. This utility would like to be given treatment equal to AmeriTrust who is Debtor's primary post petition source of financing for operating capital. The treatment that may be accorded such a lender, including the recognition of the authority to grant a priority over § 503(b) administrative expenses, is specifically contained in § 364(c) of the Bankruptcy Code

dealing with obtaining credit. The arrangement in this case, to pay for post petition utility usage, however, is not a credit arrangement. Debtor is paying *in advance* for its post petition utility service based upon projections that Ohio Edison chose not to contravert. In addition, Debtor is already burdened with interest payments to AmeriTrust to pay Ohio Edison far in advance for its utility service. Furthermore, Debtor is currently negotiating for further, more comprehensive, post petition financing with a lender who will be looking to unencumbered Debtor-in-Possession assets to secure any monies it advances. Allowing Ohio Edison a superpriority, encumbering Debtor's only bargaining tool to obtain money to reorganize, might seriously jeopardize any chance that Ohio Edison, and all of Debtor's unsecured creditors, could benefit from a reorganization plan for the benefit of all parties in interest. This utility, the monopoly supplier of electrical service to Debtor, thus seems bent, by dint of such power, on exercising a domineering power in an attempt to force this Debtor to "bargain" away any chance it has to reorganize. The inferences to be drawn from the Code, however, dictate that this attempt should fail.

In the same vein, the utility's antagonistic struggle to contest the injunction against utility shut-off, which has burgeoned into a counterclaim for alleged abuse of judicial process, seems much ado about nothing. The utility, while incensed over the specter of any type of court interference with a unilateral right to shut-off by way of a Rule 65 injunction, must surely realize that the terms and conditions of "adequate assurance of payment", which this Court must set under § 366, may well entail, as part of the Court's equitable power, an injunction against unilateral shut-off.

■ More importantly, the Court must set the terms of "adequate assurance of payment" under the facts and circumstances of this case. The $64,000.00 deposit and $107,000.00 weekly advance payment are not seriously contested as providing Ohio Edison with a reasonable protection against risk of nonpayment. The question of when the electricity can be shut-off for default in these terms is more substantial. Considering all the facts and circumstances of this case, the Court concludes that the utility does not need as "adequate assurance of payment" the right to unilateral shut-off in this case. Instead, in the event of any default, upon contacting the Court, and upon 3 days telephonic notice to counsel for Debtor, the Court will convene an emergency hearing to consider such a shut-off. Further protection will be provided the utility by ordering the Debtor to curtail its electrical usage when it cannot project payment for that usage in any given week. Finally, both parties in this matter are granted leave to file a further motion to modify this order upon affidavit of changed circumstances. It is therefore,

ORDERED that the September 29, 1983 temporary restraining order against the Ohio Edison Co. enjoining its termination of utility service to the Marion Steel Co. be, and hereby is, dissolved. It is further,

ORDERED that Debtor's motion for a preliminary injunction against the Ohio Edison Co. be, and hereby is, denied. It is further,

ORDERED that Debtor shall maintain as a security deposit the amount of $64,000.00 with Ohio Edison for post petition utility usage. It is further,

ORDERED that Debtor pay Ohio Edison $107,000.00 each Monday as advance payment for each weeks projected utility usage. It is further,

ORDERED that the Ohio Edison Company, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, be enjoined and restrained from shutting off electrical service to the Marion Steel Company except upon order of this Court. It is further,

ORDERED that Debtor curtail any electrical utility usage at any time it does not believe, based upon reasonable projections

of its ability to pay, that it can in fact pay for such usage. It is further,

ORDERED that all parties to this action be granted leave by motion, upon affidavit of changed circumstances, to seek modification of this order. It is further,

ORDERED that this opinion constitutes findings of fact and conclusions of law. It is further,

ORDERED that Ohio Edison Company's motions filed October 11, 1983 in this adversary and in the § 366 proceeding in the debtor case for findings of fact and conclusions of law be denied as moot. It is further,

ORDERED that the Clerk of this Court file and docket a copy of this Memorandum and Order in the Debtor file in this matter, which copy shall be a permanent part of such file.