**In re TEL–NET HAWAII, INC., Debtor.**

**Bankruptcy No. 88–00578.**

United States Bankruptcy Court,
D. Hawaii.

Sept. 16, 1991.

Jerrold K. Guben, Honolulu, Hawaii, for trustee (movant).

Cheryl Klepper, Honolulu, Hawaii, for respondent.

FINDINGS OF FACT AND CONCLU-
SIONS OF LAW AND ORDER RE:
TRUSTEE'S OBJECTION TO THE
CLAIM OF GTE HAWAIIAN TELE-
PHONE COMPANY

JON J. CHINEN, Bankruptcy Judge.

On July 9, 1991, Edward R. Swofford, the Trustee of Tel–Net Hawaii, Inc., ("Debtor") filed his objection to the claim of GTE Hawaiian Telephone Company, Inc., ("HawTel"). The objection was brought on for hearing on August 14, 1991, at which hearing the Trustee was represented by Jerrold K. Guben, Esq., and HawTel was represented by Cheryl Klepper, Esq.

Based on the files and records herein, the exhibits admitted into evidence, the legal memoranda submitted by the parties, and the oral arguments of counsel, and the Court, being otherwise fully advised in the premises, hereby makes the following Findings of Fact, Conclusions of Law, and Order.

## FINDINGS OF FACT

1. The Debtor filed its petition for relief on September 8, 1988.

2. The Debtor operates an intra-state microwave system pursuant to licenses issued by the Federal Communications Commission ("FCC") and a certificate of public convenience and necessity from the State of Hawaii Public Utilities Commission.

3. Prior to the filing of the petition for relief, the Debtor contracted with HawTel for 176 private line circuits, as well as local exchange and long distance service.

4. Following the filing of the petition, HawTel notified the Debtor that, pursuant to 11 U.S.C. § 366 (hereinafter "§ 366"), it was requiring the Debtor to provide deposits for the 176 private line circuits and local exchange service to assure payment of any post-petition service charges. The Debtor made the required deposit to assure payment for post-petition services.

5. In addition to the deposits required by § 366, HawTel invoiced the Debtor for preparing debtor-in-possession accounts in order to segregate pre-petition from post-petition charges. HawTel imposed this charge on the Debtor, pursuant to HawTel's PUC Tariff No. 3, Section 10, 9th Revised Section 3, which provides:

> Service order activity is classified as either initial or subsequent. It is further categorized for single line access and multi-line access application. The service order activity associated with a customer's request for connection of service, transfer of service to a different premises *or to another person or entity* (supersedes), or change in class and type of basic exchange service is considered as an initial order. Moves, changes and additions (other than central office lines) to an existing service are considered as subsequent orders.
>
> *Initial service order charges* apply to the first central office (CO) line and to each additional CO line on the same service order to be performed or provided on the same date at the same premises for the same customer. When more than one service order is issued to meet the customer's request, separate service order charges will apply as appropriate. (emphasis supplied)

(Hereinafter this charge for successor or transfer or service shall be denominated a "supersedure charge".)

6. The supersedure charge was imposed on the Debtor at the rate of $35 per circuit for 176 circuits, or $6,160.00.

7. On November 28, 1988, James N. Duca, Esq., the attorney for the Debtor, wrote to HawTel protesting the assessment of the supersedure charge. Mr. Duca informed HawTel that nothing in § 366 "or any other provision of the Bankruptcy Code" authorized the assessment of a supersedure charge. Thereafter, the Debtor refused to pay the supersedure charge although it appeared on every HawTel monthly invoice to the Debtor.

8. HawTel filed a proof of claim in the amount of $48,619.33 for the unpaid prepetition services rendered to the Debtor.

9. On September 25, 1990, this Court entered its Order Granting Trustee's and Warsaw Land Company's Motion to Allow

and Approve Transfer of Certain Unsecured Claims ("Order Transferring Claims"). Pursuant to the Order Transferring Claims, HawTel received $12,604.83 for its pre-petition unsecured claim from Warsaw Land Company.

10. On April 8, 1991, the Debtor filed its Motion to Approve Disclosure Statement, which was approved on May 6, 1991.

11. The Confirmed Plan of Reorganization in paragraph 1.42 defined an "Unclassified claim" as "a claim of the kind specified in [11 U.S.C.] Section 507(a)(2) of the Code (administrative expenses of the kind specified in Section 503(b) of the Code and fees and charges assessed against the Tel–Net Estate ...) including, but not limited to, Claims for administrative costs and expenses for goods delivered and services rendered to the Trustee or the Debtor on or after the Petition Date ..."

12. The Confirmed Plan of Reorganization defined an "allowed amount" and an "allowed claim" in paragraphs 1.01 and 1.02, respectively, to mean:

1.01 "Allowed Amount" of an Allowed Claim (as defined in paragraph 1.02) means, with respect to a pre-petition Claim (as defined in paragraph 1.05), the amount of the Claim which is allowable pursuant to Section 502 of the Code (as defined in paragraph 1.10). The Allowed Amount of a Claim includes interest, if any, accrued (but not paid) on the principal amount of the Claim up to the Petition Date (as defined in paragraph 1.27). The "Allowed Amount" of an Unclassified Claim (as defined in paragraph 1.42) shall be the amount determined by the Court or, *if the Claim arises in the ordinary course of the estate's business, the amount thereof which the Trustee does not dispute.* (emphasis supplied)

1.02 "Allowed Claim" means a claim to the extent that:

(a) A proof of claim has been filed with the Court within the time ordered by the Court or prescribed by the Rules (as defined in paragraph 1.35); or

(b) The Claim is scheduled in the claims Schedule (as defined in paragraph

1.06), and not listed as disputed, contingent, or unliquidated as to amount, provided, under either paragraph 1.35; or

(1) No objection to the allowance of such Claim is interposed; or

(2) If an objection is filed, the Court allows or estimates such Claim by an order which is Final (as defined in paragraph 1.18).

13. Article III, paragraph 3.01 of the Confirmed Plan of Reorganization established the procedure for the payment of all Unclassified or administrative expense claims, § 507(a)(1).

14. Sections 3.01(a) and 3.01(b) of the Confirmed Plan of Reorganization provide:

### ARTICLE III

### TREATMENT OF UNCLASSIFIED CLAIMS

3.01 *In General.*

3.01(a) Except for the Claims of Professional Persons, which shall be paid as provided in paragraph 3.02, each holder of an unpaid *Allowed Unclassified Claim* shall be paid, in cash, on account of an in full satisfaction of such Allowed Claims, the Allowed Amount of (ii) on the date upon which payment is due and payable in the ordinary course of the business between the Trustee or the reorganized Debtor and the holder of such Allowed Claim, or (iii) as soon as practicable after the Claim becomes an Allowed Claim, whichever is later.

3.01(b) The Court has ordered that all requests for payment of Unclassified Claims under paragraph 3.01(a) must be filed not later than three days before the date of the hearing to consider approval of the Disclosure Statement; provided that, the foregoing shall not apply to (i) post-petition taxes the returns for which are not yet due, and (ii) costs and expenses of the Trustee or the Reorganized Debtor incurred in the ordinary course of business. Any such Claim required to be filed within such period which was not so filed shall be barred. (emphasis supplied).

15. HawTel did not file a proof of claim for its supersedure charge in the amount of $6,160.00 by the May 17, 1991 bar date.

16. On June 21, 1991, HawTel wrote to the Counsel for the Trustee requesting the payment of the $6,160.00 supersedure charge (hereinafter "June 21, 1991 Letter").

17. On July 9, 1991, the Trustee filed his objection to the claim of HawTel on the grounds (1) that HawTel never filed a "proof of claim", (2) that, even if the June 21, 1991 Letter is deemed a "proof of claim", it was not within the bar date fixed by the Confirmed Plan of Reorganization and (3) even if the proof of claim was timely filed, HawTel was not entitled to a supersedure charge because said charge would violate the non-discrimination requirement of § 366.

18. On August 9, 1991, HawTel filed its opposition to the Trustee's objections, asserting that (1) its claim was timely filed under the Plan and (2) that § 366 did not preclude the collection of a "supersedure charge" from a post-petition debtor.

19. To the extent that these Findings of Fact constitute Conclusions of Law, they shall be so deemed.

## CONCLUSIONS OF LAW

Debtor's objections to HawTel's claim for the "supersedure charge" are primarily on two grounds: (1) that HawTel had failed to file a proof of claim within the bar date set by the Court and (2) that the supersedure charge violates the non-discrimination requirement of 11 U.S.C. § 366.

### (1) *Proof of Claim*

3.01(b) of the Confirmed Plan of Reorganization provides that all requests for payment of Unclassified Claims under paragraph 3.01(a) must be filed within a certain deadline; provided that such requirement did not apply to costs and expenses of the Trustee or the Reorganized Debtor incurred in the ordinary course of business.

■ The charges involved herein were billed for services provided by HawTel in the normal course of business following the filing of Debtor's petition in bankruptcy. Thus, HawTel was not required under 3.01(b) to file its proof of claim.

■ If HawTel were so required to file its proof of claim pursuant to 3.01(b), because, following the filing of the petition, HawTel did regularly send monthly invoice to Debtor, there was an "informal proof of claim" properly filed, wherein HawTel in writing, stated the nature and the amount of the claim and a clear intent to hold Debtor liable for said amount. Debtor has met the requirements of the Ninth Circuit Court for an informal proof of claim as set forth in *Pizza of Hawaii, Inc.*, 761 F.2d 1374 (9th Cir.1985). Thus, the proof of claim of HawTel is valid.

### (2) *Discrimination Against Debtor*

When a customer files a petition in bankruptcy, HawTel initiates action to terminate and finalize a debtor's "old" or pre-petition account, reestablishes a "new" post-petition account, and takes such related actions as determining and collecting deposits. The service order charges are billed to the customer to compensate HawTel for the work required to accomplish these activities.

HawTel bills service order charges in a number of circumstances, including the following:

New customer installation

Existing customer, new service installation

Existing customer, moves from one location to another (transfer of service from and to)

"Supersede" account (Examples of when applied):

    Change of ownership

    Roommate to roommate

    Previous customer abandoned and current resident has been paying or wants to take over number

    Bankruptcy

    Divorce

The amount of a service order charge is determined in accordance with HawTel's tariffs filed with and approved by the Ha-

waii Public Utilities Commission. The specific rate of the service charge depends on the type of service involved. For private line circuits the service order charge is $35 per circuit.

■ The service order charges billed in this case are intended to compensate Haw-Tel for the activities necessary to initiate new accounts for the debtor after the filing of a petition. The charges are billed to all customers in similar circumstance (e.g., customers establishing new accounts, whether as a totally new customer; for new services; or changes to the existing services of a customer). Thus, whether the debtor is treated as a "new" customer or an existing customer requiring changes to its account is irrelevant. The charging of the service order charges in this instance does not discriminate against the debtor solely because of the filing of the petition in bankruptcy and is not prohibited by 11 U.S.C. § 366.

The primary purpose of Section 366 is to ensure continuation of utility service, which is often a monopolistic service, to the debtor following the filing of a bankruptcy petition. Section 366 prohibits the utility from altering, refusing or discontinuing service to the debtor or from discriminating against the debtor solely on the basis of (1) the filing of bankruptcy or (2) the fact that the debtor may have a pre-petition debt with the utility, while at the same time providing protection to the utility through the ability to receive adequate assurance of payment. *In re Hanratty*, 907 F.2d 1418 (3rd Cir.1990); *Whittaker v. Philadelphia Electric Co.*, 92 B.R. 110 (E.D.Pa.1988).

Because the tariffed rate charged Debtor in this instance is the same charged to other customers, the Court finds that there is no discrimination by HawTel against Debtor. Thus, HawTel has a valid claim for $6,160.00.

To the extent that these Conclusions of Law constitute Findings of Fact, they shall be so deemed.

IT IS SO ORDERED.