In re John C. **TARRANT**, Debtor.

John C. **TARRANT**, Plaintiff,

v.

**CITY OF DOUGLAS, GEORGIA,**
Defendant.

**Bankruptcy No. 95–50486.**
**No. 95–05021.**

United States Bankruptcy Court,
S.D. Georgia,
Waycross Division.

Nov. 13, 1995.

Clyde W. Royals, Douglas, GA, for Debtor.

Jerome Adams, Douglas, GA, for Defendant.

### *MEMORANDUM OPINION*

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on a complaint filed by John C. Tarrant (the "Debtor") against the City of Douglas, Georgia (the "City"). This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O). The Court held a trial on Debtor's complaint on October 17, 1995. Based on the evidence presented during the trial, the Court finds in favor of Debtor and against the City. These findings of fact and conclu-

sions of law are entered pursuant to Fed. R.Bankr.P. 7052.

## FINDINGS OF FACT

This Chapter 13 case was filed on July 25, 1995. At the time of the filing of the case, Debtor was receiving electrical service as a utility customer of the City. On August 1, 1995, Debtor's electric service was terminated by the City. On that same day, the City received notice of Debtor's Chapter 13 filing. The evidence presented at the trial showed that the service was terminated early on the morning of August 1, 1995. The bankruptcy notice was received later in the morning that same day. The City's refusal to reinstate the service upon receiving notice of Debtor's bankruptcy petition is the subject of Debtor's complaint.

As of the termination of the electrical service, Debtor was in arrears by 90 days on an agreement to pay for service on two other accounts, one in the name of Debtor for $112.86, and another in the name of Debtor's wife, Tina Denise Tarrant, in the amount of $243.79. Debtor had agreed to pay these two accounts at the rate of $50.00 per month in an agreement entered into on March 3, 1995. Debtor made one $50.00 payment in compliance with this agreement on May 8, 1995. In addition, Debtor was required to pay current utility charges as they were incurred. As of August 1, 1995, Debtor owed $157.83 for current service, due to be paid on August 22, 1995. With the current service, Debtor was actually making payment on three different utility service accounts.

The City has a policy which is contained in the City of Douglas Utility Billing Procedures Manual which provides as follows:

> After service has been established the City reserves the right to discontinue said service if it finds service is to be shared with or is in whole or part for the benefit of a person or persons owing the City for previous service whether at these or any other premises.

When the service was terminated, Mrs. Tarrant called the City and talked with Treva Clement. Ms. Clement acknowledged that the service in the name of Debtor had been disconnected. Debtor's attorney then spoke personally with Ms. Clement. He advised Ms. Clement that he believed the City was obligated to restore the electrical service without requiring the payment of anything more than a new deposit.

After that conversation, Ms. Clement consulted with the City attorney. In response to that consultation, she contacted Debtor's attorney and advised him that the City would not comply with his request. She continued to insist that Debtor would be required to pay a $125.00 deposit and the full balance of the wife's previous unpaid bill for electrical service. In an effort to resolve the matter, Debtor's attorney sent a copy of 11 U.S.C. § 366 by fax to the City attorney.

Later in the day on August 1, 1995, Debtor went to the City and tendered the new deposit of $125.00. The City refused to accept the deposit and restore the service. The City advised him at that time that he would be required to pay the account of his wife in the amount of $243.79 before service could be restored in addition to the $125.00 deposit and, further, in addition to a $15.00 cut on fee. Those three items were paid two days later on August 3, 1995. The next day, on August 4, 1995, the electrical service was restored to Debtor's residence.

At the trial, both Debtor and Debtor's wife testified that Treva Clement told them that the City had a policy of terminating utility service for people who file bankruptcy. Ms. Clement denied that she made that statement. It appears from the evidence that the service was terminated on August 1, 1995, not because the bankruptcy notice was received, but because of the non-payment of the March 3, 1995, agreement.

There was no evidence as to the credit for the previous $50.00 payment which was made. It could have been credited either to the previous account of Debtor or to the previous account of the wife. Debtor was required to pay the previous account of the wife in full before the power could be restored. This points to the conclusion that the City exercised its authority to maximize its recovery as a precondition to the restoration of the electrical service by crediting the payment to Debtor's previous account. This

conclusion is based on the fact that the City believed that it could not require Debtor to make any payment towards his previous account in his name as a precondition to the restoration of the electrical service.

The City has shown that its concern for the payment of this account was reasonable. Debtor and his wife have twice before moved out of residences owing utility bills, once in the name of Debtor and on another occasion in the name of his wife.

Debtor and his wife live in the current residence with five children whose ages range from two years old to nine years old. Debtor lost refrigerated food valued at $190.00. Debtor further incurred a cost of $35.00 for lodging for the two nights during which the power to the residence was terminated. Debtor seeks an award of actual damages as well as sanctions against the City under Fed.R.Bankr.P. 9011.

### CONCLUSIONS OF LAW

The Bankruptcy Code contains explicit provisions regarding the manner in which utilities may deal with a debtor once the debtor has filed a bankruptcy petition. Those provisions are as follows:

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366 (West 1995).

"The primary purpose of Section 366 is to ensure continuation of utility service, which is often a monopolistic service, to the debtor following the filing of a bankruptcy petition." *In re Tel–Net Hawaii, Inc.*, 131 B.R. 723, 727 (Bankr.D.Hawaii 1991). Applying section 366, the court in *In re Monroe Well Service, Inc.*, 83 B.R. 317 (Bankr.E.D.Pa.1988) stated:

By its provisions, § 366(a) prevents a utility company from discontinuing utility service to a debtor solely on the basis of the debtor's failure to pay a prepetition debt. In return for its duty to continue utility service, a utility company is entitled to receive adequate assurance of future payment within twenty days of the commencement of the case. [citations omitted]. However, unlike § 365, § 366 does not require the debtor to pay a prepetition debt in order to obtain continued electric service.... The utility may not alter, refuse, or discontinue service because of the nonpayment of a bill that would be discharged in the bankruptcy case.

*Id.* at 321.

█ Section 366 does not apply merely to the discontinuation of services following the debtor's petition for bankruptcy relief. Neither is the protection section 366 offers limited to preventing discriminatory treatment and prejudice due to a debtor's decision to seek bankruptcy relief. Section 366 places an affirmative duty on utilities to reinstate previously terminated services upon notice that a customer has filed a bankruptcy petition. *Robinson v. Michigan Consolidated Gas Co. Inc.*, 918 F.2d 579, 588 (6th Cir.1990) (citing *Whittaker v. Philadelphia Electric Co. (In re Whittaker)*, 882 F.2d 791 (3rd Cir.1989)).

The *Whittaker* case, cited above, is directly on point. In *Whittaker*, the debtor's utility service was cut off before the debtor filed her bankruptcy petition. *Id.* at 791. After the utility was notified of her petition, the utility refused to reinstate her electric service until she paid an adequate assurance payment equal to twice her average monthly usage. *Id.* at 792. The court addressed the issue of "whether a utility that has terminated service prior to the filing of a bankruptcy petition due to the non-payment of service bills is required by § 366 of the Bankruptcy Code to

restore service after a petition for bankruptcy is filed, and before securing payment of adequate assurance if the debtor so requests within 20 days of the order granting relief." *Id.* at 793. Upon a review of section 366, the court held:

> When the text of § 366(a) and § 366(b) are read literally and together, they provide that the debtor has 20 days from the order of relief to come to terms on the measure of appropriate assurance and to raise the necessary funds, during which period there can be no refusal of service. Thus, the plain language of these sections requires that service be furnished, without prior payment of adequate assurance, for twenty days from the order for relief if the debtor requests such service.
>
> We conclude that Congress meant what it said. In addition to the literal meaning of the words chosen, we cannot ignore the context in which the word "refuse" appears. Section 366 prohibits three distinct actions; a utility may not "alter, refuse or discontinue service" to the debtor. If the word "refuse" were intended to mean only that the debtor's service could not be cut off, the phrase "or discontinue service to" would be superfluous. If we give effect to all of the language used, as we are normally constrained to do when construing a statute, we can only conclude that "refuse" was intended to encompass any denial of service for one of the two prohibited reasons, including a denial of restoration of service.

*Id.* at 794.

■ The above citations of law render the City's protestations that the power was not cut off because of Debtor's bankruptcy irrelevant. The City's argument that it was attempting to collect a debt owed by Debtor's wife, discussed further below, is unavailing in light of the agreement Debtor signed assuming the utility liabilities of his wife. The City possesses a claim against Debtor within the meaning of 11 U.S.C. § 101(5), and cut off Debtor's power in pursuit of payment on that claim. The City had a duty to restore power upon receiving notice of the bankruptcy filing without first seeking payment of any claims

it had against Debtor. The City failed to do so and thereby violated 11 U.S.C. § 366(a).

■ Although section 366(b) allows the utility to demand adequate assurance of future payments, "[w]here the debtor responds under section 366(b) with an objection to the demand, the court will then consider the reasonableness of the demand under the standards set forth in § 366(b)." *Heard v. City Water Board (In re Heard)*, 84 B.R. 454, 459 (Bankr.W.D.Tex.1987). The Bankruptcy Court has "the exclusive responsibility for determining the appropriate security which a debtor must provide to his utilities to preclude termination of service for non-payment of pre-petition utility bills." *Begley v. Philadelphia Electric Co. (In re Begley)*, 41 B.R. 402, 406 (E.D.Pa.1984), *aff'd* 760 F.2d 46 (3rd Cir.1985). Thus, when the City received notice of Debtor's bankruptcy petition, it had a duty to immediately restore power.

■ The City was not permitted to cut off power for a 20 day period following the petition. After the expiration of the 20 day period the City could only terminate Debtor's service if it had not received adequate assurance of payment for *post*-petition services. The amount constituting adequate assurance of payment may be initially set by the utility, but if the debtor objects, the Court will determine what amount is reasonable after notice and a hearing. The City violated section 366(a) by refusing to immediately restore power, and then section 366(b) when the City established its own adequate assurance of payment prior to reconnection in the face of Debtor's objection.

■ Moreover, the City did not limit itself to seeking adequate assurance of future payment. The City violated the automatic stay of section 362 by pursuing collection efforts of a pre-petition debt after receiving notice of Debtor's bankruptcy petition. 11 U.S.C. § 362(a). The fact that the City possessed a claim against Debtor for the unpaid balance of his wife's bill evidenced by the agreement provides a direct cause of action against Debtor regardless of the City's policy regarding the obligations of persons living at a residence. The City is therefore liable for the actual damages caused by its violations.

O.C.G.A. § 46–2–90.[1] Debtor has indicated that he lost food valued at $190.00, and incurred expenses for lodging totalling an additional $32.00. This evidence was unrebutted. Debtor is entitled to reimbursement for those damages.

■ Debtor also seeks attorney's fees under Fed.R.Bankr.P. 9011.[2] Fed.R.Bankr.P. 9011 provides:

(a) Signature. Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state the party's address and telephone number. *The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;* and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case. If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

(b) Verification. Except as otherwise specifically provided by these rules, papers filed in a case under the Code need not be verified. Whenever verification is required by these rules, an unsworn declaration as provided in 28 U.S.C. 1746 satisfies the requirement of verification.

(c) Copies of Signed or Verified Papers. When these rules require copies of a signed or verified paper, it shall suffice if the original is signed or verified and the copies are conformed to the original.

Fed.R.Bankr.P. 9011 (West 1995) (emphasis added).

■ Subsection (a) addresses documents filed with the Court, and an attorney's obligations with respect to those documents. "Sanctions under Bankruptcy Rule 9011 are warranted when (1) the papers are frivolous, legally unreasonable or without factual foundation, or (2) the pleading is filed in bad faith or for an improper purpose." *Glatter v. Mroz (In re Mroz),* 65 F.3d 1567, 1572 (11th Cir.1995). Debtor's complaint alleges that the City acted in bad faith by refusing to turn on Debtor's power after Debtor's attorney faxed a copy of 11 U.S.C. § 366 to the City's attorney, and by pursuing a legally unreasonable defense to Debtor's complaint. The incorrect statements of law the City relied upon were reiterated in the City's answer to Debtor's complaint.[3] The City's

1. The liability of utility companies is discussed in the Georgia Code as follows:

 If any company under the jurisdiction of the commission does, causes to be done, or permits to be done any act which is prohibited, forbidden, or declared to be unlawful, or fails to do any act which is required either by a law of this state or by an order of the commission, such company shall be liable to the persons affected thereby for all loss, damage, or injury caused thereby or resulting therefrom. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any such person. In case of

 recovery, if the jury finds that such act or failure to act was willful, it may fix a reasonable attorney's fee, which shall be taxed and collected as part of the costs of the case.
 O.C.G.A. § 46–2–90 (West 1995).

2. Although not raised by the Debtor, the Court notes that both 11 U.S.C. § 362(h) and O.C.G.A. § 46–2–90 also support an award of attorney's fees.

3. Debtor's attorney demanded that the utility service be restored following payment of the $150.00 deposit. As this opinion demonstrates, that request reflects an incorrect interpretation

answer suffices to place the City's conduct and litigative position within the scope of Fed.R.Bankr.P. 9011. The focus of the Court's inquiry is on whether the conduct of the allegedly offending party was reasonable at the time the documents were signed. *Id.* at 1572.

Rule 9011 places a duty on an attorney to verify that the argument contained in any document submitted to the Court "is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Bankr.P. 9011 (West 1995). In the present case, the City argued two positions that the Court finds to be untenable. First, that the scope of section 366 is limited to the discontinuation of electric service solely based on the commencement of a bankruptcy case. Second, that the City's assertion that it may proceed against a bankruptcy debtor for the debts of another person without violating the automatic stay of section 362.

With regard to the City's arguments under section 366 of the Bankruptcy Code, the Court agrees with the Third Circuit Court of Appeals in *Whittaker* that the plain language of section 366 requires a utility to continue or restore service for the twenty day period following the debtor's petition in bankruptcy. The City represented that it was familiar with the terms of section 366, and yet maintains that all section 366 accomplishes is to prevent discriminatory disconnection of utility service. This assertion is belied by the plain language of section 366. Moreover, a minimal review of applicable case law would have spelled out the City's obligations as a utility to a bankruptcy debtor.

Had the City engaged in even this minimal research prior to submitting its answer it would have become clear that the City was in violation of its duty. Instead, the City defended its termination of services, and caused Debtor to incur damages and attorney's fees as a result. The City cited no cases to the

Court in support of its position in either the answer to Debtor's complaint or the subsequent trial. The City's arguments contained in the answer and reiterated at trial are neither warranted by existing law nor a good faith argument for the extension, modification, or reversal of existing law.

With regard to the City's debt collection policies, the Court finds the City's arguments equally insupportable. The City's policy is that the City will cut off a customer's power if it discovers that a person owing the City money is living with the customer. The policy states:

> After service has been established the City reserves the right to discontinue said service if it finds service is to be shared with or is in whole or part for the benefit of a person or persons owing the City for previous service whether at these or any other premises.

 The City has not supported its ability to force one person to pay for the debts of another with a single statutory or case citation. At trial, this Court voiced the concern that the policy might amount to an invasion of privacy. Georgia law respects the right to privacy as derived from natural law, and protected by both the United States Constitution and that of the State of Georgia. *McDaniel v. Atlanta Coca–Cola Bottling Co.,* 60 Ga.App. 92, 2 S.E.2d 810 (1939). The ability of a person or governmental unit in the state of Georgia to monitor the activities within or the occupants of another person's home is sharply circumscribed by statute. *See e.g.* O.C.G.A. § 16–11–62. The policy adhered to by the City disregards whether or not the customer billed at any residence is current on his or her bills, and purports to condition the service on who is staying at the home of the paying customer.

The potential for abuse in the enforcement of the policy is disturbing. One could easily imagine married couples forced to live separately, or students coming home from college

of 11 U.S.C. § 366(b). The service should have been restored without the immediate requirement for the payment of a deposit. Had the service been restored in response to Debtor's demand, Debtor would not be heard now to object to the requirement for the payment of the

deposit prior to restoration of the service. Debtor's demand, although incorrect as a matter of law, was more generous than the law required. Having refused to accept Debtor's offer, the City will not be heard now to complain that it was mislead by Debtor's demand.

for the summer only to find that they cannot stay at home unless their parents first pay the students' utility bills. The utility's purported right to monitor the persons living at any particular residence is far too reminiscent of the society depicted in George Orwell's *1984*. This is particularly so where the utility and the government are one in the same, as in this case.

However, the Court need not decide at this time whether the policy followed by the City violates the right to privacy contained in the United States Constitution, the Constitution of the State of Georgia, or applicable Georgia statutes. Further, the Court may not be possessed with the statutory authority to consider such a question. For the purposes of Rule 9011, the Court need only note that the position adhered to by the City is completely unsupported by any existing law. The only support the City was able to cite in favor of its policy is that this is the same policy followed by other utility service[4]. Again, as to this contention, the Court finds that the City's position is unsupported by any existing law or any good faith argument for the extension, modification, or reversal of existing law.

The City states that it was not in violation of section 362 because it did not attempt to collect Debtor's outstanding balance from Debtor, but rather that of Debtor's wife. However, the City sought payment, and in fact accepted payment, from Debtor. The City's argument amounts to an awkward proposition that it may maintain collection actions against a bankruptcy debtor post-petition as long as the City is attempting to collect someone else's debts from Debtor. Either the City had a claim against Debtor or it did not. In order to maintain collection activities against Debtor, the City had to have some basis for liability which would be supportable under the law. If the City had such a basis for liability, it would have a claim against Debtor for the debt. In that case, the City is in violation of sections 366 and 362 of the Bankruptcy Code. If the City had no basis for liability, it had no right to pursue collection activities against Debtor. In that case, the City has engaged in frivolous litigation. Endorsing the City's actions would amount to creating an exception to the automatic stay in order to allow a creditor to pursue a claim against a debtor as long as the creditor asserts that it has no legal basis on which to state its claim. This is most assuredly not a good faith argument for the extension of existing law.

Besides ignoring the fact that there is no rule of law which would provide the City with a cause of action under its stated policy, the City also ignores the import of the agreement Debtor signed with the City. This agreement provided the City with a contractual cause of action against Debtor independent of its shared use policy. This cause of action is a claim within the meaning of 11 U.S.C. § 101(5), and the City does not dispute that it terminated Debtor's service and refused to reinstate such service in an effort to collect the debt evidenced by the agreement. Therefore, the Court concludes that the City's position is untenable, and at odds with the plain language of the Bankruptcy Code and unsupported by any good faith argument for the extension, modification, or reversal of existing law. The City has violated Fed.R.Bankr.P. 9011, and is also liable for Debtor's attorney's fees incurred in connection with this adversary proceeding.

In sum, the City's defense of this action is based on a selective review of the facts coupled with reliance upon a City debt collection policy which may be unenforceable under existing law. The City's claim in this bankruptcy case includes the debt evidenced by the agreement obligating Debtor to pay his wife's utility bills. The fact that the City maintained collection activities against Debtor post-petition based on debt he was contractually obligated to pay places the City in willful violation of the automatic stay of section 362 of the Code. 11 U.S.C. § 362(a).[5]

---

4. Without deciding the question of the relevancy of such an assertion, no evidence was offered in support of it.

5. The City did not terminate the utility service with knowledge of the pending bankruptcy.

Still, the actions amounted to a technical violation of section 362 and section 366. The violations could have been remedied without an adverse consequence if the utility service had been immediately restored following receipt of notifi-

The fact that the City cut off Debtor's utility service in an effort to collect that debt places the City in violation of section 366 of the Code. 11 U.S.C. § 366(a). The complete absence of any legal authority to support the legal positions taken by the City in documents submitted to the Court and subsequently at trial places the City in violation of Fed.R.Bankr.P. 9011.

The City will be held liable for Debtor's actual damages incurred as a result of his loss of power, reasonable attorney's fees incurred in bringing this adversary proceeding and punitive damages pursuant to 11 U.S.C. § 362(h). The City will also be required to return those funds Debtor paid in order to obtain restoration of utility service. The Debtor will be ordered to contact the Courtroom Deputy on receipt of this opinion and order for the purpose of scheduling a hearing to determine the City's adequate assurance of payment rights under section 366(b), to determine how the $50.00 previously paid by the Debtor under the agreement was credited, to hear any objections to the Debtor's claimed attorney's fees and to determine the amount of punitive damages to be awarded to Debtor.

An order in accordance with this memorandum opinion will be entered this date.

### ORDER

A Complaint has been filed in this case by John C. Tarrant (the "Debtor") against the City of Douglas, Georgia (the "City"), alleging violations of 11 U.S.C. §§ 362, 366 and Fed.R.Bankr.P. 9011. For the reasons stated in the accompanying memorandum opinion, the Court finds in favor of the Debtor, and against the City. Accordingly, it is hereby

ORDERED that the City return to the Debtor all funds collected from the Debtor post petition in the form of deposits, payments on past due accounts and fees or charges imposed by the City associated with restoring the Debtor's power service; and it is hereby further

ORDERED that the Debtor contact the Court for the purpose of scheduling a hearing pursuant to 11 U.S.C. § 366(b) upon receipt of this opinion and order. Any undue delay on the Debtor's part will be seen as prejudicial to the City's rights under section 366(b), and will result in a decrease in the Court's award of costs and fees; and it is hereby further

ORDERED that the Debtor immediately provide the City with a copy of its attorney's fees reasonably incurred in the prosecution of this action. If there are any objections to the Debtor's claimed fees, the Court will hear such objections at the above referenced hearing; and it is hereby further

ORDERED that the City submit an affidavit at said hearing stating how the $50.00 paid by the Debtor pre-petition was credited to the Debtor's outstanding balance; and it is hereby further

ORDERED that the City pay to the Debtor damages in the amount of $225.00 representing lost food and lodging during the time the City wrongfully withheld the Debtor's power service in violation of 11 U.S.C. § 366(a); and it is hereby further

ORDERED that the parties present evidence at the hearing as to the amount of punitive damages to be awarded to Debtor.

---

cation of pendency of the case. The City's misconduct occurred when it failed to take steps to remedy the error. In seeking to take advantage of the innocent violation of the law, the character of it is transformed into a willful offense.